UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                :

ARCELORMITTAL             :
CLEVELAND, INC., *et al.*,     :       CASE NO. 1:10-CV-00362
            Plaintiffs,     :
                                :
vs.                            :       OPINION & ORDER
                                :        [Resolving Doc. No. 11]
JEWELL COKE COMPANY, L.P.*,*   :
                                :
            Defendant.     :
                                :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      In this contract dispute, the Defendant Jewell Coke Company, L.P. ("Jewell") moves the Court to dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [Doc. 11-1.] The Plaintiffs, ArcelorMittal Cleveland Inc. and ArcelorMittal Indiana Harbor LLC (collectively "ArcelorMittal") oppose the motion. [Doc. 23.] Jewell has replied. [Doc. 30.]

      For the following reasons, this Court **DENIES** the Defendant's motion to dismiss.

## I. Background

      The Plaintiffs bring this case seeking reformation of an alleged mistake in a long-term contract for the supply of blast furnace coke. [Doc. 11-1 at 1, Doc. 23 at 1.] ArcelorMittal Cleveland is a Delaware corporation that owns and operates steel mills in Cleveland, Ohio. [Doc. 1 at ¶ 2.] ArcelorMittal Indiana Harbor is a Delaware limited liability company that owns and

Case No. 1:10-CV-00362
Gwin, J.

operates steel mills in East Chicago, Indiana.  [*Id.* at ¶ 3.]  The Defendant Jewell is a limited liability partnership that produces blast furnace coke in Vansant, Virginia.  [Doc. 1 at ¶ 4, Doc. 31 at ¶ 4.] The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1).

On October 2, 2002, ArcelorMittal and Jewell agreed that Jewell would provide an annual supply of approximately 700,000 tons of blast furnace coke.  [Doc. 23 at 6-7.]  This agreement ran through 2005, with an option for ArcelorMittal to extend the contract through 2007.  [*Id.*]  On October 28, 2003, ArcelorMittal also contracted to purchase 550,000 tons of coke annually from the Haverhill North Coke Company, a Jewell affiliate ("Haverhill Coke Agreement").  [Doc. 11-1 at 4.] Both Jewell and Haverhill are subsidiaries of Sun Coal & Coke Company ("Sun").  [Doc. 32 at ¶ 10.]

In October 2003, ArcelorMittal and Jewell executed a restated and amended coke supply agreement ("the amended purchase agreement").  [Doc. 11-1 at 3.]  The amended purchase agreement extended the original 2002 agreement through 2007.  Additionally, the parties also contracted for the sale of 700,000 tons of coke annually from January 1, 2008 through 2020 under a new pricing formula.  [Doc. 23 at 9.]  The parties based their amended purchase agreement pricing formula on the price of coke sold to ArcelorMittal under the 2003 Haverhill Coke Agreement.  [Doc. 23 at 9.][1/]

The Plaintiffs allege that the pricing formula for coke in the amended purchase agreement contains an error.  [Doc. 1.]  One component of the sale price for the Jewell coke is a "Coal Cost per Ton of Coke" figure.  The Coal Cost per Ton of Coke for Jewell coke is calculated in the amended purchase agreement by multiplying the current month's Coal Cost per Ton for Haverhill Coke by a

---

[1/] In December 2003, the parties amended the coke purchase agreement again.  This final amended agreement made minor changes to the amended purchase agreement and also contains the disputed coke pricing formula.  [Doc. 11-1 at 23.]

Case No. 1:10-CV-00362
Gwin, J.

multiplier.  The pricing multiplier, or "Jewell multiplier," is calculated by dividing the weighted average of the Coal Cost per Ton of Coke actually paid in Haverhill Coke Agreement during 2007 by the sum of another calculation.  [Doc. 1 at ¶; Doc. 11-1 at 5.]  Thus, in the amended purchase agreement, the 2007 weighted average of Haverhill Coke is in the numerator of the Jewell multiplier.[2/]  [Doc. 11-1 at 6.]  The product of this calculation is the Coal Cost per Ton for Jewell Coke, which is used to calculate the total sale price of Jewell coke in the amended purchase agreement.

The Plaintiffs allege, however, that the Haverhill Coal Cost per Ton of Coke 2007 weighted average is actually supposed to be in the denominator of the Jewell multiplier and that the multiplier was inverted during the drafting process.  [Doc. 1 at ¶ 42.]  Because of the inversion, the Plaintiffs calculate that they are now paying a 50% premium for Jewell coke over the price of Haverhill coke, instead of paying a discount–a discount Plaintiffs claim should have been part of the contract.  On January 1, 2008, the allegedly incorrect pricing term for Jewell coke went into effect.  [Doc. 23 at 12.]  The Plaintiffs calculate the current total overcharge at $100 million, with the total amount at issue through the remainder of the contract at over $1 billion.  [*Id.*]

ArcelorMittal says that during the negotiations of the amended agreement the Defendant provided an illustration  ("Illustration") detailing the pricing formula.  [Doc. 23 at 10.]  This Illustration arguably sought to explain the complex pricing formula in the amended purchase agreement.  [*Id.*]  In the Illustration, the 2007 weighted average of Haverhill coke is placed in the

---

[2/] The actual formula for the Jewell multiplier in the amended purchase agreement is "[t]he weighted average[of the] 'Coal Cost per Ton of Coke' from January 1, 2007 through December 1, 2007, as determined in accordance with the Haverhill Agreement ÷ (the Initial Coke Price in effect as of December 31, 2007 - [Fixed Cost per Ton of Coke + Variable Cost per Ton of Coke])."  [Doc. 11-1 at 5.]

Case No. 1:10-CV-00362
Gwin, J.

denominator of the Jewell multiplier, whereas in the actual contract this figure is placed in the numerator of the multiplier.  [Doc. 23 at 10.]  The Plaintiffs allege that the multiplier in the Illustration was the actual intent of the parties and that Jewell coke was to be purchased at a discount from the Haverhill coke.  [Doc. 23 at 11.]  The Defendant, however, says that the pricing formula in the amended purchase agreement is correct.  [Doc. 32.]  Thus, this dispute turns on whether the 2007 weighted average of Haverhill Coke belongs in the numerator or the denominator of the pricing multiplier.[3/]

On July 21, 2009, ArcelorMittal filed a complaint in the Cuyahoga County Court of Common Pleas.  *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co.*, No. 1:09-CV-01981 (N.D. Ohio Jan. 26, 2010).  Jewell removed the case to the federal court for the Northern District of Ohio.  [*Id.*]  On January 26, 2010, Judge Aldrich granted, without prejudice, Jewell's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.

On February 17, 2010, ArcelorMittal filed a new complaint.  [Doc. 1.]  The Plaintiffs seek to rescind or reform the amended sales agreement based on mutual mistake (Count I) or unilateral mistake (Count III).  [*Id.*]  The Plaintiffs also seek restitution for alleged overpayments under the amended sales agreement (Count II).  [*Id.*]

The Defendant says that this Court should dismiss this action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.  Specifically, the Defendant argues that (1) the Plaintiffs fail to state a plausible claim of either mutual or unilateral

---

[3/] As a math refresher, the numerator of a fraction is the upper portion and the denominator is the bottom portion.  Thus, in the fraction 3/4, the three is the numerator and the four is the denominator.

Case No. 1:10-CV-00362
Gwin, J.

mistake; (2) the Plaintiffs' mistake claims fail as a matter of law because the Plaintiffs were

negligent in discovering the alleged mistake; (3) the Plaintiffs' claim of mutual mistake fails as a

matter of law because the Plaintiffs' fail to adequately plead mutual mistake, and instead plead an

implausible scrivener's error; (4) the Plaintiffs' unilateral mistake claim fails due to an insufficient

pleading of the Defendant's knowledge of the mistake; (5) the Plaintiffs' unilateral mistake claim

fails because the Plaintiffs bore the risk of mistake; and (6) the Plaintiffs' claim for unjust

enrichment is barred since an express contract governs the dispute.   [Doc. 11-1.]

## II. Legal Standard

A court may grant a motion to dismiss only when "it appears beyond doubt" that the plaintiff

fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*,

355 U.S. 41, 45 (1957).  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  The

plausibility requirement is not a "probability requirement," but requires "more than a sheer

possibility that the defendant has acted unlawfully." *Id.*

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires

that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled

to relief."  Fed. R. Civ. P. 8(a)(2).  "Rule 8 marks a notable and generous departure from the

hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 129 S. Ct. at 1949 (citations

removed).  In addition, "[i]n all averments of fraud or mistake, the circumstances constituting fraud

or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b).

-5-

Case No. 1:10-CV-00362
Gwin, J.

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true. *Iqbal*, 129 S. Ct. at 1949-51.

### III. Analysis

*III.A    A Plausible Claim of Mistake?*

The Defendant first says that the Plaintiffs' claims of both mutual and unilateral mistake must be dismissed since the Plaintiffs do not allege a plausible mistake.  [Doc. 11-1 at 9.]  Specifically, the Defendant argues that the Plaintiffs fail to allege any  facts that substantiate the claim that the pricing formula in the amended purchase agreement is in error and that the Jewell coke was supposed to be priced at a discount to Haverhill coke.  [Doc. 11-1 at 9.]

In contract law, a mistake is "a belief that is not in accord with the facts."  Restatement (Second) of Contracts § 151.  A mistake can be grounds for rescission or reformation of a contract. *See Reilley v. Richards*, 632 N.E.2d 507, 508-09 (Ohio 1994); *Galehouse Constr. Co., Inc. v. Winkler*, 714 N.E.2d 954, 955 (Ohio Ct. App. 1998); *Mason v. Swartz*, 600 N.E.2d 1121, 1125 (Ohio Ct. App. 1991).

Here, the Court is presented with two plausible stories regarding the Jewell pricing multiplier. The Plaintiffs allege that during the course of negotiations with Sun (the parent company of both Jewell and Haverhill) that Sun and the Plaintiffs agreed Jewell coke would be sold at a discount relative to Haverhill coke.  [Doc. 1 at ¶ 55.]  In their complaint, the Plaintiffs present a narrative of several years of negotiations  between ArcelorMittal and Sun that explains why Jewell coke was supposed to be discounted in the amended purchase agreement.  This narrative is adequate to clear the plausibility requirement of *Iqbal* and *Twombly*.

-6-

Case No. 1:10-CV-00362
Gwin, J.

According to the Plaintiffs, in July 2002--prior to the initial 2002 contract with Jewell for the purchase of coke – the Plaintiffs and Sun discussed the possibility of building a coke facility in Haverhill, Ohio, dedicated solely to the Plaintiffs. [*Id.* at ¶ 15.] Negotiations between the Plaintiffs and Sun continued for several months. In the interim, the Plaintiffs and Jewell reached a separate contract in 2002 for the sale of 700,000 tons of Jewell coke. [*Id.* at ¶ 13.]

In December 2002, Plaintiff say Sun proposed a contract for the sale of 1,250,000 tons of coke per year; the contract would maintain the supply of 700,000 tons of Jewell coke and would augment this total with another 550,000 tons annually from the Haverhill plant. [*Id.* at ¶ 16.] Over the course of several meetings in April 2003, the Plaintiffs voiced concern about paying the same price for Jewell coke as for Haverhill coke. [*Id.* at ¶¶ 21, 22.] The Plaintiffs say that the concern resulted from the claimed lower quality of Jewell coke, which allegedly has a higher ash content than does Haverhill coke. [*Id.* at ¶ 21.] Based upon these concerns, the Plaintiffs rejected the combined offer. [*Id.* at ¶ 23.]

In late 2003, Sun and ArcelorMittal revisited the earlier proposal, and the two companies agreed upon a pair of contracts. The first contract was for the sale of 550,000 tons of coke annually from the proposed Haverhill facility. [*Id.* at ¶ 26.] The second contract (the amended purchase agreement) was for 700,000 tons of coke annually and was an amendment to the 2002 purchase contract between Jewell and ArcelorMittal; the amended purchase agreement retained the 2002 price term through 2007, but then replaced the price term with the disputed pricing formula for the period between 2008 and 2020. [*Id.* at ¶ 38.] Thus, the result of this negotiation was a pair of related contracts between Sun and ArcelorMittal – the first for the purchase of Haverhill coke and the second for the purchase of Jewell coke, allegedly at a relative discount.

-7-

Case No. 1:10-CV-00362
Gwin, J.

The Plaintiffs present several other reasons beyond high ash content to explain the discount price of Jewell coke relative to Haverhill coke, including: (1) the Jewell coke plant is adjacent to captive mines owned and operated by a Jewell affiliate, while Haverhill must obtain its coal on the open market; (2) the Haverhill coke is priced at a premium to help recoup the expense of building the new Haverhill facility; and (3) Haverhill's operations are unionized, while Jewell's are not. [*Id.* at ¶¶ 17-20.]

In the narrative, the Plaintiffs also explain why the Coal Cost per Ton of Jewell coke was to be based on the Haverhill figure. Since the Jewell coke plant received its supply of coal from Sun-owned captive mines, its costs of production are non-public and Sun refused to disclose these prices during negotiations. [*Id.* at ¶ 30.] The parties allegedly decided to use the public market rates paid by the Haverhill plant as a cost-of-production baseline, and then discount the price using the disputed Jewell multiplier to account for the lower production costs of the Jewell coke. [*Id.* at ¶ 30.]

The Defendant disputes this story, claiming that the Plaintiffs' description of the purpose of the multiplier is simplistic, makes little business sense, and that the underlying claim that Jewell coke was supposed to be discounted is implausible and is not supported by the evidence. [Doc. 30 at 4-7.] However, regardless of whether Jewell coke was actually supposed to be discounted under the Jewell multiplier, the Plaintiffs allege sufficient facts in their complaint to support the claim of mistake. The Plaintiffs allege, based upon the negotiations of the contract, that Jewell coke was supposed to be priced at a discount and that the final amended purchase agreement mistakenly priced Jewell coke at a premium. Thus, the Plaintiffs plead the circumstances constituting mistake with a sufficient degree of particularity to satisfy the heightened requirements of Federal Rule of Civil Procedure 9(b).

-8-

Case No. 1:10-CV-00362
Gwin, J.

*III.B    Claims of Mistake Barred Due to Negligence?*

Jewell also says that ArcelorMittal's claims of both unilateral and mutual mistake are barred because ArcelorMittal negligently failed to earlier discover the allegedly erroneous multiplier. [Doc. 11-1 at 16.]   The Defendant argues that Ohio contract law precludes a negligent party from recovering based on mistake and that the Plaintiffs fail to specifically plead that it was not negligent and that it exercised good faith and fair dealing.  [*Id.* at 17.]

In determining whether a party's fault will bar recovery due to mistake, Ohio courts adopted the standard set forth in the Second Restatement of Contracts.  *See State ex rel. Walker v. Lancaster City Sch. Dist. Bd. of Educ.*, 680 N.E.2d 993, 996-97 (Ohio 1997) (adopting Second Restatement standard).  Under the Restatement, "[a] mistaken party's fault in failing to know or discover the facts before making the contract does not bar him from avoidance or reformation . . . unless his fault amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing." Restatement (Second) of Contract § 157; *see also General Tire, Inc. v. Mehlfeldt*, 1999 WL 420346, at *6 (Ohio Ct. App. Jun. 23, 1999) (stating that only "gross negligence" bars rescission of a contract based on mistake); *Gartrell v. Gartrell*, 908 N.E.2d 1019, 1023 (Ohio Ct. App., 2009) (stating that "ordinary negligence" does not bar rescission of contract based on mistake); *Haven House Manor, LTD v. Gabel*, 2003 Ohio App. LEXIS 6104, at *8-9 (Ohio App., Dec. 5, 2003) (remedy based on mistake not precluded unless fault amounts to a failure to act in good faith).  Thus, ArcelorMittal is correct in stating that something more than ordinary negligence is required under Ohio law to bar its claims of mistake.  [Doc. 23 at 21.]

Here, ArcelorMittal particularly alleges facts in their complaint that, if accepted as true, establish that they were not grossly negligent or acting in bad faith.  Admittedly, the Plaintiffs will

-9-

Case No. 1:10-CV-00362
Gwin, J.

have a difficult time at trial explaining how they did not notice the allegedly inverted Jewell

multiplier until such a late date.  Indeed, by its discovery, the alleged mistake was repeated in a

December 2003 amendment to the amended purchase agreement, a 2008 guaranty agreement, and

was used to calculate the payment of several invoices.  [Doc 11-1 at 17-18.]

But, for the purposes of a motion to dismiss, ArcelorMittal's claim that it did not notice the

mistake, despite acting at "all relevant times in the exercise of due care," will suffice.  [*Id.* at ¶ 44.]

ArcelorMittal says that it did not notice the allegedly inverted pricing formula in the amended

purchase agreement because of the Illustration provided by the Defendant during negotiations.  The

Defendant supplied the Illustration to explain the disputed pricing formula.  The Illustration reverses

the numerator and denominator from the actual contract and ArcelorMittal claims that it relied upon

this formula and did not notice the reversal of the terms in the final amended purchase agreement.

[*Id.* at ¶ 45.]  This pleading satisfies the "good faith and fair dealing" requirement under Ohio law,

and the Court rejects the argument that negligence bars the Plaintiffs' claims as a matter of law.[4/]

*III.C   Mutual Mistake*

The Defendant says that the Plaintiffs' claim of mutual mistake must be dismissed since the

Plaintiffs fail to allege a mutual mistake, and instead allege only a scrivener's error.  [Doc. 11-1 at

19.]  Defendants further contend that the Plaintiff's claim of a scrivener's error fails as a matter of

law because the error occurred across multiple documents.  [*Id.* at 23.]  The Plaintiffs concede that

they plead a scrivener's error, but state that this is a form of mutual mistake and that multiple

occurrences of such mistake does not bar relief as a matter of law.  [Doc. 23 at 23-26.]

---

[4/] The Court also rejects the Defendant's argument that ArcelorMittal should be equitably barred from bringing
its mistake claims due to unreasonable delay in bringing suit.  [Doc. 11-1 at 19.] The claims of mutual and unilateral
mistake were brought within the applicable statute of limitations and a determination of whether the delay was reasonable
is a factual matter not yet ripe for determination.  Ohio Revised Code §§ 2305.06, 2305.14.

Case No. 1:10-CV-00362
Gwin, J.

"An erroneous belief as to the contents or effect of a writing that expresses [an] agreement is . . . a mistake." Restatement (Second) of Contract § 151, cmt. a.  It is a mistake where the parties to a contract reach an agreement, but then fail to correctly reduce that agreement to writing. Restatement (Second) of Contracts § 155, ctm. a.  This type of mistake, often typographical, is generally referred to as a "scrivener's error." The First Restatement of Contracts explicitly describes this error as one of mutual mistake.  Restatement (First) of Contracts § 504; Restatement (Second) of Contracts § 155, Reporter's Note (adopting § 504 of the First Restatement).[5/]  Ohio courts have adopted the Restatement formulation, and a scrivener's error is considered a type of mutual mistake. See Castle v. Daniels, 475 N.E.2d 149, 153 (Ohio Ct. App. 1984) (describing a typographical error as a mutual mistake); Harvey v. Harvey, 632 N.E.2d 956, 960-61 (Ohio Ct. App. 1993) (same); Music v. Sash & Storm, Inc., 2002 WL 468582, at *2 (Ohio Ct. App. Mar. 28, 2002) (same); Corbin on Contracts § 28.45 (describing various scrivener's errors as mutual mistakes).

Under Ohio law, a mutual mistake can be grounds for either reformation or rescission of a contract.  A court may reform an instrument where, due to mutual mistake, the instrument does not express the actual intention of the parties.  Castle, 475 N.E.2d at 152; Mason, 600 N.E.2d at 1125. A mutual mistake is a proper basis for rescinding a contract when the mistake relates to a material aspect of the parties' agreement.  Reilley, 632 N.E.2d at 509; State ex rel. Walker, 680 N.E.2d at 996-97.  However, where the mutual mistake is one of expression, as in the case of a scrivener's error, rescission is generally only appropriate where reformation will not adequately protect the interests'

---

[5/] "§ 504. Reformation For Mutual Mistake:  Except as stated in §§ 506 and 509-511, where both parties have an identical intention as to the terms to be embodied in a proposed written conveyance, assignment, contract or discharge, and a writing executed by them is materially at variance with that intention, either party can get a decree that the writing shall be reformed so that it shall express the intention of the parties, if innocent third persons will not be unfairly affected thereby." Restatement (First) of Contracts § 504.

Case No. 1:10-CV-00362
Gwin, J.

of the parties.  Restatement (Second) of Contracts § 155, cmt. b.[6/]

To succeed on a claim of mutual mistake, a court must find by clear and convincing evidence that the parties were mutually mistaken regarding the contents of the contract.  Stewart v. Gordon, 53 N.E. 797, 798 (Ohio 1899); Harvey, 632 N.E.2d at 960; Swartz, 600 N.E.2d at 1121. ArcelorMittal pleads that (1) the Haverhill Coal Cost per Ton of Coke 2007 weighted average was supposed to be in the denominator of the Jewell pricing multiplier and (2) that the multiplier was inverted during the drafting process and then subsequently recopied into a number of different documents.  [Doc. 1 at ¶¶ 42-46.]  Taken as true, these allegations make out a *prima facie* case of mutual mistake.  Further, these allegations are pled with sufficient particularity to satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b) for claims of mistake. Thus, ArcelorMittal sufficiently pleads mutual mistake and the Court denies the Defendant's motion to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6).[7/]

*III.D    Unilateral Mistake*

Jewell also requests that the Court dismiss the Plaintiffs' claim of unilateral mistake under Federal Rule of Civil Procedure 12(b)(6).  Jewell says that ArcelorMittal fails to adequately plead the elements of unilateral mistake.  Specifically Jewell argues that ArcelorMittal fails to plead facts alleging that Jewell was aware of the error.  [Doc. 11-1 at 24-26.]

"A unilateral mistake occurs when one party recognizes the true effect of an agreement while

---

[6/] It is not necessary for the Court to decide at this juncture whether reformation or rescission would be most appropriate.

[7/] Jewell argues that where a scrivener's error is repeated across multiple documents that the claim must be dismissed as a matter of law.  However, there is no rule precluding a suit based on mistake where the error is repetitious in nature.  The only support for this point cited by the Defendant is an Ohio Appellate decision affirming a trial court's ruling that a scrivener's error is unlikely to be replicated in three different deeds.  *See* Zwaryz v. Wiley, 1999 WL 689940, at *3 (Ohio Ct. App. Aug. 20, 1999).  Although an error is more likely to occur in a single document, it does not preclude ArcelorMittal from pleading a repeated scrivener's error.

Case No. 1:10-CV-00362
Gwin, J.

the other does not."  *General Tire, Inc. v. Mehlfeldt*, 691 N.E.2d 1132, 1136 (Ohio Ct. App. 1997).

A court may rescind a contract on the basis of a unilateral mistake.  Ohio courts apply Section 153

of the Second Restatement of Contracts to determine whether to rescind a contract due to unilateral

mistake.  *Faivre v. DEX Corp. Northeast*, 913 N.E.2d 1029, 1037 (Ohio Ct. App. 2009).[8/]  Thus,

under Ohio law, the party seeking rescission must show by clear and convincing evidence:  (1) that

it made a mistake at the time the contract was entered into; (2) that the mistake had a material effect

on the agreed exchange of performances that was adverse to the mistaken party; and (3) that the other

party knew or should have known of that mistake.  *Aviation Sales, Inc. v. Select Mobile Homes*, 548

N.E.2d 307, 310 (Ohio Ct. App. 1988) (applying Restatement (Second) of Contracts § 153); *Gatrell*,

908 N.E.2d at 1022.

Generally, a court will not reform a contract in the case of a unilateral mistake.  *Galehouse*,

714 N.E.2d at 955.  However, "where the mistake occurred due to a drafting error by one party and

the other party knew of the error and took advantage of it, the trial court may reform the contract."

*Id.*; *Faivre*, 913 N.E.2d at 1036.  To reform a contract based on unilateral mistake, a plaintiff must

prove mistake by clear and convincing evidence.  *Galehouse*, 714 N.E.2d at 955.

Here, ArcelorMittal pleads the elements of unilateral mistake with a sufficient degree of

particularity.  First, ArcelorMittal pleads that the Haverhill Coal Cost per Ton of Coke 2007

weighted average was supposed to be in the denominator of the Jewell pricing multiplier but that the

multiplier was accidentally inverted during the drafting process.  [Doc. 1 at ¶¶ 42-46, 68-69.]

---

[8/] "§ 153. When Mistake Of One Party Makes A Contract Voidable:  Where a mistake of one party at the time
a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange
of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under
the rule stated in § 154, and (a) the effect of the mistake is such that enforcement of the contract would be
unconscionable, or (b) the other party had reason to know of the mistake or his fault caused the mistake."  Restatement
(Second) of Contracts § 153.

Case No. 1:10-CV-00362
Gwin, J.

Second, ArcelorMittal pleads that the inversion resulted in a significant overpayment for Jewell

coke, which potentially could result in over $1 billion in overpayments over the full term of the

contract.  [*Id.* at ¶ 56.]  If true, this is undoubtedly a material mistake.  Finally, ArcelorMittal alleges

that the Defendant knew or should have known of the error.  The Plaintiffs allege that the Defendant

drafted the contract, provided an Illustration with the pricing multiplier in an inverted position,

engaged in negotiations where the discounted price was discussed and agreed upon, and then later

accepted the steeply inflated payments.  [*Id.* at ¶¶ 21, 26, 32, 41-46, 55-58.]  These allegations, if

taken as true, would prove unilateral mistake under Ohio law and would justify either reformation

or rescission of the contract.  The allegations also satisfy the heightened pleading requirement of

Federal Rule of Civil Procedure 9(b) for claims of mistake.  Thus, the Court denies the Defendant's

motion to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6).[9/]

*III.E     Unjust Enrichment and Restitution*

The Defendant also requests that this Court dismiss the Plaintiffs' claim for unjust

enrichment (Count II) because Ohio law does not allow recovery under an unjust enrichment theory

where an express contract covers the same subject matter.  [Doc. 11-1 at 27.]  The Defendant says

because the Jewell multiplier is an express contractual term on point that a claim of unjust

enrichment  is barred as a matter of law.  [*Id.*]

Although Ohio law does not permit recovery under a theory of unjust enrichment where an

express contract governs, *Randolph v. New England Mut. Life Ins.*, 526 F.2d 1383, 1387 (6th Cir.

---

[9/] The Defendant also argues that the claim of unilateral mistake should be dismissed since the Plaintiffs fail
to "show that Jewell bore the risk of such mistake."  [Doc. 11-1 at 26.]  However, this argument misstates the law of
unilateral mistake.  Under the Second Restatement of Contracts, a party who bears the risk of mistake is barred from
recovering for unilateral mistake.  Restatement (Second) of Contracts § 153.  Ohio courts have applied this exception
as an affirmative defense to a claim of mistake.  *See Mehlfeldt*, 1999 WL 420346, at *4; *In re Simonin*, 360 B.R. 627,
631 (Bankr. N.D. Ohio 2006).  Thus, since burden of risk is an affirmative defense, it is not necessary for ArcelorMittal
to plead who bore the risk of mistake.

Case No. 1:10-CV-00362
Gwin, J.

1975), Ohio law does allow a party to plead unjust enrichment in the alternative when the validity of the contract is in dispute. *Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F. Supp.2d 763, 772 (N.D. Ohio 2004) (stating that under Ohio law unjust enrichment may be pled in the alternative where the contract is in dispute); *Cheers Sports Bar & Grill v. DirectTV, Inc.*, 563 F. Supp.2d 812, 819 (N.D. Ohio 2008) (same).  Thus, since the validity of the amended purchase agreement is in dispute, ArcelorMittal may validly plead unjust enrichment.

To succeed on a claim for unjust enrichment, a plaintiff must prove (1) that a benefit was conferred by the plaintiff on the defendant; (2) the defendant's knowledge of the benefit; and (3) the improper retention of the benefit.  *Cheers*, 563 F. Supp.2d at 819 (citing *Metz v. Am. Elec. Power Co.*, 877 N.E.2d 316 (Ohio Ct. App. 2007)).  ArcelorMittal says (1) that payments were made under the allegedly erroneous pricing formula, resulting in a $100 million overpayment; (2) that Jewell had reason to know of the error since it  inserted the mistake into the amended purchase agreement; and (3) that Jewell retained the overpayments.  [Doc. 1 at ¶¶ 55, 69.]  Taken as true, these allegations make out a *prima facie* case of unjust enrichment.  Accordingly, ArcelorMittal sufficiently pleads a claim for unjust enrichment and the Court denies the Defendant's motion to dismiss this claim under Federal Rule of Civil Procedure 12(b)(6).

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Defendant's motion to dismiss.

IT IS SO ORDERED.

Dated: September 21, 2010                        s/        *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE