UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
JEWELL COKE COMPANY, L.P., :
: CASE NO. 1:10-CV-1946; 1:10-CV-362
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 28]
ARCELORMITTAL USA, INC., :
:
Defendant. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this contract dispute, Plaintiff and Counter-Defendant Jewell Coke Company ("Jewell") moves the Court to dismiss the counter-claim filed by the Defendant and Counter-Claimant, ArcelorMittal USA, Inc. ("ArcelorMittal USA") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [Doc. 28-1.] ArcelorMittal USA opposes the motion. [Doc. 94.] Jewell has replied. [Doc. 114.]

For the following reasons, the Court **DENIES** Jewell's motion to dismiss.

**I. Background**

In this contract dispute, Defendant ArcelorMittal USA files a counterclaim against Plaintiff Jewell, alleging that Jewell fraudulently induced ArcelorMittal USA to guaranty a coke supply contract between Jewell and ArcelorMittal USA's subsidiaries, ArcelorMittal Cleveland Inc. and ArcelorMittal Indiana Harbor LLC (collectively "ArcelorMittal Cleveland & Indiana"). [Doc. 18 at ¶¶ 72-80.] Jewell is a limited liability partnership that produces blast furnace coke in Vansant,

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

Virginia. [Doc. 1 at ¶ 8.] ArcelorMittal USA is a Delaware corporation with its principal place of business in Chicago, Illinois. [Doc. 18 at ¶ 5.] ArcelorMittal USA manufactures steel and is the parent corporation of ArcelorMittal Cleveland & Indiana. [Doc. 1 at ¶ 9; Doc. 18 at ¶ 9.] The Court enjoys diversity jurisdiction under 28 U.S.C. § 1332(a)(1) since there is complete diversity and the amount in controversy exceeds $75,000.

This particular action has been consolidated with a related action between Jewell and ArcelorMittal Cleveland & Indiana, and it arises out of the same nucleus of facts. *See ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, No. 1:10-CV-00362 (N.D. Ohio). In October 2002, ArcelorMittal Cleveland & Indiana[1] and Jewell entered into an agreement that Jewell would annually supply approximately 700,000 tons of blast furnace coke. [Doc. 18 at ¶ 14.] This agreement ran through 2005, but gave ArcelorMittal Cleveland & Indiana an option to extend the contract through 2007. [*Id.*] In October 2003, ArcelorMittal Cleveland & Indiana also contracted to purchase 550,000 tons of coke annually from the Haverhill North Coke Company, a Jewell affiliate ("Haverhill Coke Agreement"). [*Id.* at ¶ 17.]

Also in October 2003, ArcelorMittal Cleveland & Indiana and Jewell executed a restated and amended coke supply agreement ("the amended purchase agreement"). [*Id.* at ¶ 16.] The amended purchase agreement extended the original 2002 agreement through 2007 and it also contracted for the sale of 700,000 tons of coke annually by Jewell from January 1, 2008 through 2020 under a new pricing formula. [*Id.* at ¶¶ 18-19.] The parties based the amended purchase agreement pricing

---

[1] Prior to the merger of Mittal Steel USA and Arcelor S.A. in 2006, ArcelorMittal Cleveland & Indiana's predecessor companies were ISG Cleveland and ISG Indiana Harbor. However, for the sake of simplicity, the Court refers to these companies as ArcelorMittal Cleveland & Indiana both prior to and after the merger which resulted in their current names.

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

formula on the price of coke sold to ArcelorMittal Cleveland & Indiana under the 2003 Haverhill Coke Agreement. [*Id.* at ¶¶ 18-23.]

In the related litigation, now consolidated with this action, ArcelorMittal Cleveland & Indiana allege that the new pricing formula in the amended purchase agreement contains an error, which is causing them to pay an approximately 50% premium for Jewell coke. *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P*, 2010 WL 3749592 (N.D. Ohio Sept. 21, 2010). In that action, ArcelorMittal Cleveland & Indiana claim that a multiplier in the new pricing formula was inverted – a mistake that the Plaintiffs in that suit calculate already cost them $100 million, with a total amount over the life of the contract of more than $1 billion. *Id.* ArcelorMittal Cleveland & Indiana seek to have the amended purchase agreement reformed or rescinded due to unilateral or mutual mistake, and also assert claims of fraud, civil recovery, civil conspiracy, and a civil RICO violation against Jewell. [Doc. 61.]

In 2007, ArcelorMittal USA was ordered by the United States Department of Justice to sell its facility at Sparrows Point for antitrust reasons. [Doc. 18 at ¶¶ 52-55.] At that time, Sparrows Point LLC was also a party to the previously discussed amended purchase agreement. [*Id.*] In connection with the sale of Sparrows Point LLC, Jewell and ArcelorMittal USA entered into a letter agreement ("guaranty agreement"), in which both Jewell and Haverhill consented to Sparrows Point's withdrawal from the amended purchase agreement. [*Id.*] As a condition for allowing the withdrawal, ArcelorMittal USA guaranteed the obligations of ArcelorMittal Cleveland & Indiana under the amended purchase agreement. [*Id.*] The guaranty agreement currently remains in force.

On September 1, 2010, Jewell filed a complaint, seeking a declaratory judgment ruling that in the event that the amended purchase agreement between Jewell and ArcelorMittal Cleveland &

-3-

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

Indiana is reformed or rescinded, that ArcelorMittal USA is still required to guarantee payment under the amended purchase agreement's original terms. [Doc. 1 at ¶ 56.] Jewell also asserted a claim of negligent misrepresentation, alleging that ArcelorMittal USA was aware that ArcelorMittal Cleveland & Indiana believed that the amended purchase agreement contained a mistake in 2008 when the guaranty agreement was signed, but that ArcelorMittal USA purposely withheld this information from Jewell. [Id. at ¶¶ 58-65.] The Court granted ArcelorMittal USA's motion to dismiss, dismissing the declaratory judgment count as unripe and the negligent misrepresentation count for failure to state a claim. [Doc. 20.]

In its counterclaim, ArcelorMittal USA alleges that Jewell and its parent corporation, Sunoco, became aware of the mistake in the pricing formula in the amended purchase agreement in 2005 – about two years after the agreement was signed – but that Jewell did not inform ArcelorMittal Cleveland & Indiana of the mistake before ArcelMittal USA entered the guarantee. [Doc. 18 at ¶ 36.] ArcelorMittal USA says that Jewell instead schemed to profit from this mistake, while also attempting to insulate itself from the consequences of the mistake's eventual discovery. [Id. at ¶ 37.] According to ArcelorMittal USA, the final step in this fraudulent scheme was inducing ArcelorMittal USA to sign the guaranty agreement, which guaranteed its subsidiaries' obligations under the incorrect pricing provision. [Id. at ¶¶ 52-68.] ArcelorMittal USA alleges, first, that during the negotiations of the guaranty agreement that Jewell fraudulently concealed its knowledge of the mistake, and second, that Jewell also concealed that it was seeking the guaranty so it could later try to force ArcelorMittal USA to pay for coke under the mistaken pricing formula, even if that formula

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

was later reformed or rescinded by a court. [*Id.* at ¶¶ 58-65.][2/]

Jewell says that this Court should dismiss ArcelorMittal USA's counterclaim under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. Specifically, Jewell argues that (1) it did not have a duty to inform ArcelorMittal USA of the purported mistake; (2) ArcelorMittal USA did not justifiably rely upon Jewell's alleged omission; and (3) ArcelorMittal USA failed to plead a non-speculative pecuniary injury. [Doc. 28-1.]

## II. Legal Standard

A court may grant a motion to dismiss only when "it appears beyond doubt" that the plaintiff fails to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility requirement is not a "probability requirement," but requires "more than a sheer possibility that the defendant has acted unlawfully." *Id.*

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 129 S. Ct. at 1949 (citations removed). In addition, "[i]n all averments of fraud or mistake, the circumstances constituting fraud

---

[2/] ArcelorMittal USA initially brought a complaint alleging five causes of action. [Doc. 18.] However, with the exception of the fraudulent inducement claim, ArcelorMittal USA voluntarily dismissed all of the counts without prejudice. [Doc. 22.]

-5-

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true. *Iqbal*, 129 S. Ct. at 1949-51.

### III. Analysis

The only claim remaining in ArcelorMittal USA's complaint is its counterclaim for fraudulent inducement. As a preliminary matter, the Court must determine if New York state law applies to this claim. The Court previously held that the choice of law provision in the guaranty agreement, specifying that New York law will govern, is valid and enforceable. *Jewell Coke Co., L.P. v. ArcelorMittal USA, Inc.*, 2010 WL 4628756, at *6-7 (N.D. Ohio., Nov. 8, 2010). Having previously made that determination, the Court must now decide whether a claim of fraudulent inducement falls within the scope of that choice of law provision. The Sixth Circuit previously held that fraud and misrepresentation claims generally fall within similar choice of provisions, since those tort claims are closely related to the performance of the contract. *See Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993); *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139-40 (6th Cir. 1993); *Baumgardner v. Bimbo Food Bakeries Distribution, Inc.*, 697 F. Supp. 2d 801 (N.D. Ohio 2010). In the current suit, the Court finds that ArcelorMittal USA's counterclaim falls within the ambit of the choice of law provision because the claim is closely related to the performance and underlying negotiation of the guaranty agreement. Accordingly, the Court applies New York law to this claim.

To state a fraudulent inducement claim under New York law, a plaintiff must establish that: "(1) the defendant made a material false representation, (2) the defendant intended to defraud the

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 415-16 (2d Cir. 2006). A fraudulent concealment or omission claim shares these same elements, with the additional requirement that a plaintiff must show that the defendant had a duty to disclose the material information. *See Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007). Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud . . . ." Courts have interpreted Rule 9(b) to require a plaintiff to plead "the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted). In other words, a plaintiff must allege the "'who, what, when, where, and how' of the alleged fraud." *Id.* at 877 (citation omitted). This requirement ensures that the complaint "alert[s] the defendants 'to the precise misconduct with which they are charged'" to protect them "'against spurious charges of immoral and fraudulent behavior.'" *Id.* at 877 (citation omitted).

*III.A   Misrepresentation or Omission*

The first element of a claim of fraudulent inducement under New York law is a material false representation. *Wall*, 471 F.3d at 415-16. ArcelorMittal USA alleges that Jewell and Sunoco embarked on a scheme, beginning in 2005, to defraud ArcelorMittal USA and its subsidiaries, ArcelorMittal Cleveland & Indiana through the use of an improper pricing formula. [Doc. 18 at ¶ 35.] The complaint claims that in July 2005 Jewell began informing the General Electric Capital Corporation that there was a mistake in the pricing multiplier in the amended purchase agreement. [*Id.* at ¶ 36.] ArcelorMittal USA further alleges that in late July 2005 Jewell and SunCoke "began

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

directing a series of communications to . . . ArcelorMittal USA, concerning the [pricing multiplier in the amended purchase agreement], as well estimates of the coal cost and the coke price form 2008." [*Id.* at ¶ 39.] These communications were purportedly designed to mislead ArcelorMittal USA and its subsidiaries so that they would not notice that the pricing multiplier in the amended purchase agreement was inverted. [*Id.*] Among these communications, ArcelorMittal USA alleges that Jeff Wozek, a purchasing manager at Jewell and SunCoke, sent a series of emails to various ArcelorMittal USA employees throughout late 2005 and 2006 in which Wozek explained and discussed the disputed pricing formula (in allegedly inverted fashion), but that he did not disclose that the pricing formula was mistaken. [*Id.* at ¶¶ 40-44.] Similarly, ArcelorMittal USA alleges that while ArcelorMittal USA and Jewell negotiated the guaranty agreement at issue – between March and May 2008 – that Jewell representatives, including Mark McCormick, failed to disclose the mistake in the underlying amended purchase agreement and instead used the inverted formula as though it was correct. [*Id.* at ¶¶ 52-68.]

These allegations are sufficient to satisfy the requirements of Rule 12(b)(6), as well as the heightened pleading requirement of Rule 9(b). Taking the pleadings as true, ArcelorMittal USA alleges that employees of Jewell and Sunoco knew that the pricing formula was mistaken, knew that ArcelorMittal USA and its subsidiaries did not share this knowledge, and then purposely failed to inform ArcelorMittal USA of the mistake on several occasions. If true, these allegations would satisfy the first element of a claim of fraud. Similarly, relevant to the Rule 9(b) pleading standard, the allegations provide the time and place of the omissions, the speaker, and the content of the communications, therefore satisfying the heightened pleading standard for fraud claims.

*III.B  Duty to Disclose*

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

Although ArcelorMittal USA adequately pleads that Jewell failed to inform ArcelorMittal USA of the mistake in the pricing provision, this omission is not actionable unless Jewell also had a duty to disclose that information to ArcelorMittal USA. *Woods v. Maytag Co.*, 2010 WL 4314313, at *10 (E.D.N.Y., Nov. 2, 2010). Under New York law, a duty to disclose generally only arises in three situations: (1) where the party has made a partial or ambiguous statement; (2) when the parties stand in a fiduciary or confidential relationship with each other; and (3) where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge (the so-called "special facts doctrine"). *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2nd Cir.1993).

Jewell says that the fraud claim fails on this element because Jewell had no duty to inform ArcelorMittal USA of the mistaken pricing provision. [Doc. 28-1; Doc. 114.] Jewell argues that none of the situations creating an affirmative to disclose apply in this case; specifically, Jewell says, first, that there was no fiduciary relationship between the parties, and second, that the special facts doctrine does not apply because Jewell possessed no specialized or superior knowledge regarding the pricing formula. [*Id.*] Responding, ArcelorMittal USA says that Jewell had a duty to disclose the alleged mistake in the pricing formula because Jewell made statements to ArcelorMittal USA where Jewell provided partially true statements regarding the pricing multiplier, but then failed to notify ArcelorMittal USA of the mistake in the provision. [Doc. 94 at 7.]

Both parties are actually correct in their assertions on this element of the cause of action. Under the second grounds for finding a duty to disclose – a fiduciary relationship – Jewell correctly argues that it did not stand in a fiduciary relationship with ArcelorMittal USA since the guaranty agreement is nothing more than a normal arm's length business transaction. *See Brass*, 987 F.2d at

-9-

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

150. Further, under the third grounds for finding a duty to disclose – specialized or superior knowledge, i.e. the special facts doctrine – Jewell is correct in saying that ArcelorMittal USA does not plead facts that would satisfy the doctrine's two-prong test. The special facts doctrine requires a showing that the material fact was (1) information "peculiarly within the knowledge" of the defendant and (2) that the information was not such that could have been discovered by the plaintiff through the "exercise of ordinary intelligence." *Black v. Chittenden*, 503 N.E.2d 1370 (N.Y. 1986); *see also MCI Worldcom Comms. Inc., v. LD Wholesale, Inc.*, 2007 WL 2914862, at *1-2 (2d Cir. 2007) (summary order). Even if all of ArcelorMittal USA's allegations are proven at trial, ArcelorMittal USA will not be able to show that the claimed mistake in the pricing multiplier was peculiarly within Jewell's knowledge. ArcelorMittal USA and its subsidiaries could have discovered the claimed error just as easily as Jewell by closely reviewing the contract. Similarly, it will be very difficult for ArcelorMittal USA to show that it could not have found the same mistake through exercise of ordinary intelligence – indeed, again, simply reading the contract would have revealed the error. Thus, Jewell correctly argues that no fiduciary relationship existed and that ArcelorMittal USA cannot satisfy the two-prong test required by the special facts doctrine.

However, under the first situation where a duty to disclose can arise – where the party has made a partial or ambiguous statement – ArcelorMittal USA alleges that Jewell had knowledge that the pricing multiplier was inverted in the amended purchase agreement, but continued to represent that formula as correct. [Doc. 18 at ¶¶ 35-36, 52-68.] Essentially, ArcelorMittal USA is saying that Jewell purposely gave them half of the truth about the pricing multiplier. If true, these allegations adequately plead a duty by Jewell to disclose the mistake in the pricing multiplier. *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995); *Brass*, 987 F.2d at

-10-

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

150 ("once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth"); *ADL, LLC v. Tirakian*, 2010 WL 3925131, at \*13-15 (E.D.N.Y. Aug. 26, 2010) (holding that where party is not permitted to conceal material facts within its knowledge once party speaks, even though there was no duty to speak in the first instance); *Freund v. Weinstein*, 2009 WL 2045530, at \*2 (E.D.N.Y. July 8, 2009) (same). Thus, the Court finds that the ArcelorMittal USA has adequately pleaded facts, that if proven true, create a duty on the part of Jewell to disclose its knowledge of the mistake in the pricing formula.[3/]

*III.C Intent to Defraud (Scienter)*

The next element of a claim of fraud – intent to defraud or scienter – is not disputed by the parties. To adequately plead scienter, a plaintiff may either allege "a motive for committing fraud and a clear opportunity for doing so," or "when the motive is not apparent," "identify [] circumstances indicating conscious behavior by the defendant." *Powers v. British Vita*, 57 F.3d 176, 184 (2d Cir. 1995). Here, ArcelorMittal USA's complaint satisfies this requirement. First, the complaint pleads a plausible motive – a desire to collect payment under the mistaken pricing provision, and specific to the guaranty, an intent to bind ArcelorMittal USA to the mistaken pricing provision even if the contract was reformed by a court. [Doc. 18 at ¶¶ 35-68.] Whether or not they are true, these allegations plead a motive to commit fraud. *Turkish v. Kasenetz*, 27 F.3d 23, 28 (2d Cir. 1994) (noting that motive often involves the potential for economic benefit). Second, the complaint also pleads a clear opportunity for committing the fraud. The complaint alleges that

---

[3/] The Defendant relies upon *MCI Worldcom*, 2007 WL 2914862 for the proposition that discussing the terms of a contract cannot ever, as a matter of law, constitute a half-truth creating a duty to speak. [Doc. 114 at 8.] The Defendant overstates the import of this case. Nonetheless, this decision may be very persuasive – and indeed, potentially dispositive – on a later motion for summary judgment. However, the decision of the Second Circuit in *MCI Worldcom* was a decision reversing a ruling following trial. Here, the Court is considering a motion to dismiss. Unlike the Second Circuit in *MCI Worldcom*, the Court may not consider materials outside of the pleadings. As alleged in the complaint, ArcelorMittal USA adequately pleads facts that would create a duty to speak, which is sufficient on a motion to dismiss.

-11-

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

employees at Jewell and Sunoco were in communication with employees at ArcelorMittal USA both prior to and during the negotiations surrounding the guaranty agreement. *See Turkish*, 27 F.3d at 28 (noting that opportunity involves being in a position to carry out a plan); *see also Wight v. BankAmerica Corp.*, 219 F.3d 79, 92 (2d Cir. 2000); *Cohen v. Koenig*, 25 F.3d 1168, 1174 (2d Cir. 1994). Finally, the complaint alleges ample facts to support an inference that Jewell employees had a consciousness of wrongdoing; ArcelorMittal USA alleges that the Jewell and Sunoco employees who were in contact with ArcelorMittal USA knew that there was a mistake in the amended purchase agreement and purposely failed to disclose that information so as to induce ArcelorMittal USA to enter into the guaranty agreement under disfavorable terms. [Doc. 18 at ¶¶ 35-68.] Thus, the complaint adequately pleads factual circumstances that would satisfy the scienter element of a claim of fraudulent inducement under the pleading requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6).[4]

*III.D  Reasonable Reliance*

To prevail on a claim of fraudulent omission, ArcelorMittal USA must also prove that it actually relied upon the omission and that such reliance was reasonable or justifiable. *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 154 (2d Cir. 1995). In other words, ArcelorMittal USA must prove that it was justified in believing the misrepresentations and omissions allegedly made by Jewell and that it was reasonable to act upon those misrepresentations.

Generally, whether or not reliance on alleged misrepresentations is reasonable is intensely

---

[4] As the Court finds that ArcelorMittal USA adequately pleads motive and opportunity to commit fraud, the Court need not consider whether the Plaintiff also sufficiently pleaded conscious misbehavior. *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 456 (S.D.N.Y. 2007).

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

fact-specific and is considered a determination that is inappropriate on a motion to dismiss, *Bank of Am. Corp. v. Braga Lemgruber*, 385 F. Supp. 2d 200, 230 (S.D.N.Y. 2005); however, in certain circumstances, "whether a plaintiff has adequately pleaded justifiable reliance can be a proper subject for a motion to dismiss." *Id.* In evaluating whether a plaintiff has adequately alleged justifiable reliance, a court may consider, for example, the sophistication and expertise of the plaintiff in financial matters, the existence of a fiduciary relationship, access to the relevant information, concealment of the fraud, and the opportunity to detect the fraud. *Brown v. E.F. Hutton Group, Inc.*, 991 F.2d 1020, 1032 (2d Cir. 1993). "[I]f the plaintiff has the means of knowing, by the exercise of ordinary intelligence, the truth, or the real quality of the subject of the misrepresentation, he must make use of those means." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 228 (S.D.N.Y. 2007).

Here, the Court finds that ArcelorMittal USA's complaint sufficiently pleads this element of the cause of action. Although a very close determination, the Court finds that it would not be appropriate to dismiss the claim on this grounds at such an early juncture. Whether ArcelorMittal USA's reliance upon Jewell's representations and omissions was justifiable and reasonable will turn on a number of factual determinations. For example, the content of the statements allegedly made by the Jewell and Sunoco employees will be highly relevant in determining whether ArcelorMittal USA reasonably relied upon Jewell's representations regarding the amended purchase agreement. Generally, a sophisticated party, such as ArcelorMittal USA, cannot maintain a cause of action where the party claiming fraud had access to the truth-revealing information or where the grounds for the fraud could have been uncovered through reasonable diligence. *Doehla v. Wathne Ltd.*, 1999 WL 566311, at *10 ((S.D.N.Y. Aug. 3, 1999) (citing cases). Indeed, ArcelorMittal USA is a major

-13-

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

corporation that had sufficient resources to analyze the contents of the pricing multiplier, separate and apart from Jewell's representations. Nonetheless, on a motion to dismiss the Court is limited to the allegations in the complaint, and finds that facts sufficient to satisfy the pleading requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6) are alleged.

*III.E Damages*

Under the final element of a claim of fraud, a plaintiff must prove that he or she suffered damages as a result of the fraudulent conduct. *Wall*, 471 F.3d at 416. Jewell argues that ArcelorMittal USA fails to allege injury since it does not allege that it suffered pecuniary harm under the guaranty agreement. [Doc. 28-1 at 10.] Jewell says that since its own declaratory judgment action to enforce the guaranty agreement was dismissed that ArcelorMittal USA is not now able to allege a non-speculative harm. [*Id.*]

However, contrary to Jewell's assertions, under New York law ArcelorMittal USA adequately alleges an injury sufficient to survive a motion to dismiss. "The injury element of a fraud claim is interpreted differently depending on whether the remedy sought is damages or rescission." *Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506, 543 (S.D.N.Y. 1997). Generally, an action for damages requires that the plaintiff plead concrete pecuniary loss. *Id.* (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)). However, in an action to rescind a contract due to fraud, a party is not required to plead pecuniary loss. *Dornberger,* 961 F. Supp. at 543 (collecting cases). Rather, the plaintiff must plead that he or she suffered injury by "recieving[ing] something different from what she contracted for and that she might not have accepted the same had the facts not been misrepresented to her." *Krinsky v. Title Guarantee & Trust Co.*, 298 N.Y.S. 31, 37 (N.Y. App. Div. 1937); *see also Mott v. Tri-Continental Fin. Corp.*, 330 F.2d

Case No. 1:10-CV-1946; 1:10-CV-362
Gwin, J.

468, 470 (2d Cir. 1964) (stating that sufficient injury to warrant rescission is shown where plaintiff "received something other than that for which he bargained.")

In the complaint, ArcelorMittal USA seeks "an order rescinding the Guaranty as procured through fraud." [Doc. 18.] As ArcelorMittal USA pleads that it signed a guaranty agreement materially different from what it bargained for and intended to sign, the allegations survive a motion to dismiss. Indeed, ArcelorMittal USA claims that it was under the impression that it was guaranteeing the obligations of its subsidiaries under the "correct" pricing provision, whereas the agreement that ArcelorMittal USA actually signed guarantees payment under the "incorrect" pricing provision. [*Id.* at ¶¶ 65-68.] Upon a default by its subsidiaries, this difference may bind ArcelorMittal USA to pay Jewell for coke at an allegedly inflated price. This risk of harm is a sufficient "legal injury." *See Dornberger*, 961 F. Supp. at 544. Therefore, ArcelorMittal USA's complaint adequately pleads the damages element of a claim for fraudulent inducement.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** Jewell's motion to dismiss and finds that ArcelorMittal USA has adequately alleged its claim of fraudulent inducement under the pleading requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6).

IT IS SO ORDERED.


Dated: December 27, 2010            s/    *James S. Gwin*
                                    JAMES S. GWIN
                                    UNITED STATES DISTRICT JUDGE